NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BARRY LEWIS MATTHEWS, | |
| Plaintiff, | Civil No. 12-2517 (JBS) |
| v. | OPINION |
| WARDEN JOHN DOE, et al., | |
| Defendants. | |

**APPEARANCES:**
Barry Lewis Matthews, *Pro Se*
04484-084
FCI Loretto
P.O. Box 1000
Loretto, PA 15940

**SIMANDLE, Chief Judge**

Plaintiff, Barry Lewis Matthews, currently incarcerated at the Federal Correctional Institution, Loretto, Pennsylvania seeks to bring this action *in forma pauperis* ("IFP").[1] Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed IFP pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

The Court must now review the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), to determine whether it should be dismissed as frivolous or malicious, for failure to

---

[1] At the time he submitted his Complaint, Plaintiff was housed at FCI Talladega, in Talladega, Alabama.

state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that Plaintiff's Complaint should be dismissed.

**BACKGROUND**

The following facts are taken from Plaintiff's Complaint, Section IV, "General Medical History," pp. 4-5.

Plaintiff states that he was taken into federal custody in 1994. Prior to his arrest, he had been examined by an eye specialist and scheduled for surgery to correct a detached retina in his right eye. He also suffers from glaucoma in his left eye.

While housed at FCI Allenwood, Plaintiff was seen by attending physicians, but then was placed in the Special Housing Unit for approximately one year, during which no outside physicians were consulted. During that time, Plaintiff alleges he suffered irreparable damage to his eye.

Plaintiff was transferred to Lewisburg USP, and was examined again by doctors, who noted that his eye condition had deteriorated. Plaintiff notes that Bureau of Prisons ("BOP") officials repeatedly took him off of his "prescribed non-generic form of eye drops" for the glaucoma condition. He states that the specialist recommended that only name brand drops be used. (Compl., p. 4). Physician Assistants at the BOP have told

Plaintiff that it is the policy to use generic brands, not the name brand prescriptions. Plaintiff alleges that his glaucoma became worse because of the "inconsistencies with eye drop treatment." (Compl., p. 5).

Plaintiff states that after years of "delayed treatment," he was taken to MDC Brooklyn and was seen by an optometrist. The doctor noted on June 30, 2010, that Plaintiff was legally blind, suffered from severe myopia, and needed a glaucoma workup. On July 22, 2010, a specialist and physicians noted a cataract, end stage glaucoma, and recommended low vision refraction, a retinal consult, and a visual fields consult. Again, in September of 2010, another physician noted that Plaintiff's vision was deteriorating, that he was only being treated with topical agents and a medication.

Plaintiff contends that: "This goes to show that the physicians treating Matthews subjectively knew that surgery was the only appropriate and medically indicated remedy. They failed to provide it." (Compl., p. 5).

Plaintiff asserts that prison officials were deliberately indifferent to his medical needs by delaying adequate medical care, by refusing to prescribe him the name brand eye drops, and by failing to provide special eyeglasses. (Compl., p. 6). He asks for monetary relief and names as defendants five wardens

(Allenwood, Lewisburg, Raybrook, Schuylkill, and Fort Dix), as well as Dr. J. Chung, Dr. Stephen Hoey, Dr. Michael Borecky, Dr. Nicolette Turner-Foster, Dr. Odeida Dalmassi, MLP Estelle Richardson, and John and Jane Doe defendants.

## DISCUSSION

### 1. Standards for a *Sua Sponte* Dismissal

The Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B). This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and § 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Citing its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)(citing *Iqbal*, *supra*).

The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. *See Iqbal*, 556 U.S. 677-679. *See also Twombly*, 505 U.S. at 555, & n.3; *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011); *Bistrian v. Levi*, 696 F.3d 352 (3d Cir.

2012). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)).

2.  **Bivens Actions**

Plaintiff brings this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging violations of his civil rights guaranteed under the United States Constitution. In *Bivens*, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment. In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983. Both are designed to provide redress for constitutional violations. Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into *Bivens* suits. *See Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987).

In order to state a claim under *Bivens*, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. *See*

*Mahoney v. Nat'l Org. For Women*, 681 F. Supp. 129, 132 (D. Conn. 1987) (citing *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978)).

3.  **Named Defendants**

A defendant in a civil rights action "must have personal involvement in the alleged wrongs" and "can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In order to sustain a *Bivens* action, a plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

In this case, Plaintiff names no specific individuals within the body of his complaint, except to mention a Dr. Mukkamala (not listed as a defendant), and Dr. Hoey who noted that Plaintiff was having extreme vision problems. Plaintiff shows no involvement by the Wardens, or the other doctors listed as defendants, and does not assert constitutional violations against Dr. Hoey. Thus, his complaint does not pass the *Iqbal* requirement of plausibility, and does not "allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Fowler*, 578 F.3d at 210 (citing *Iqbal*, *supra*). As such, the Complaint must be dismissed.

### 4. <u>Medical Care Claim</u>

Examining the merits of Plaintiff's Complaint, this Court also finds that the claims, as pled, cannot pass *sua sponte* screening.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle*, 429 U.S. at 106; *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as:

(1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); *see also Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. *See Natale*, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *See Andrews v. Camden County*, 95 F. Supp.2d 217, 228 (D.N.J. 2000); *Peterson v. Davis*, 551 F. Supp. 137, 145 (D. Md. 1982), *aff'd*, 729 F.2d 1453 (4th Cir. 1984).

Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-06; *White*, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *See Rouse*, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. *See Atkinson*, 316 F.3d at 266. *See also Monmouth County Correctional Institutional Inmates*, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ...

prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993); *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990).

Here, Plaintiff's eye condition appears to satisfy the objective prong, showing a serious medical need.  However, Plaintiff's allegations do not satisfy the subjective element showing deliberate indifference necessary to support an Eighth Amendment denial of medical care claim. He admits that he received treatment — he was taken to the medical department and was given drops and medication.  He was seen by specialists.  He was examined by physicians.  Plaintiff attaches to his Complaint his Administrative Remedies and Appeals.  In Exhibit B to the Complaint, Plaintiff notes that he is "vehemently dissatisfied" that the warden stated that the ophthalmologist has not recommended surgery.  Plaintiff argues that "the only adequate treatment in [his] case to restore [his] vision is 'cataract removal surgery.'"  (Compl., Ex. B).  It is clear that Plaintiff is dissatisfied with the conclusions of the medical department.  However, it is also clear that he was treated for his condition in accordance with Eighth Amendment standards.

11

After his appeal to the Central Office, the Administrator of the National Inmate Appeals noted on August 27, 2009:

> Relevant portions of your medical record have been reviewed which reveal you have been diagnosed with advanced glaucoma, end stage glaucoma, cataract, and decreased visual acuity. You have been evaluated by a consultant optometrist and ophthalmologist who both indicate surgery will not improve your acuity. As such, surgery is not clinically indicated. You have been issued glasses which provide a 20/60 distant vision and 20/20 near vision. The record reflects you are receiving medical care and treatment in accordance with Bureau policy.

(Compl., Ex. C).

At best, Plaintiff states a claim of medical malpractice or medical negligence, which is not actionable under a § 1983 or *Bivens* action. *See Estelle*, 429 U.S. at 105-06; *White*, 897 F.3d at 110 (even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation). Therefore, this Court will dismiss this denial of medical care claim, without prejudice, for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

Again, this Court notes that even if Plaintiff's claims were sufficient to withstand *sua sponte* dismissal, Plaintiff has not alleged facts against particular defendants, making it impossible

12

for this Court to determine if venue is proper in this District, and which defendants are responsible for which claims.

## CONCLUSION

For the reasons stated above, Plaintiff's Complaint must be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim upon which relief may be granted.  The dismissal is without prejudice to Plaintiff filing a motion to reopen and an Amended Complaint to address the deficiencies, as set forth in this Opinion.

An appropriate Order follows.


                                        **s/ Jerome B. Simandle**
                                        JEROME B. SIMANDLE, Chief Judge
                                        United States District Court

Dated:     **January 18, 2013**